### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-cv-03269-CMA-KLM

DAVID HARRISON,

    Plaintiff,

v.

TAURUS INTERNATIONAL
MANUFACTURING, INC. and
TAURUS HOLDINGS, INC.,

    Defendants.

_____

### FIRST AMENDED COMPLAINT AND JURY DEMAND
_____

Plaintiff David Harrison, by and through undersigned counsel, brings this First Amended Complaint and Jury Demand against Defendants Taurus International Manufacturing, Inc. and Taurus Holdings, Inc. and states the following in support:

### NATURE OF ACTION

Plaintiff David Harrison ("Harrison" or "Plaintiff") purchased a defective firearm manufactured by Defendants Taurus International Manufacturing, Inc. and Taurus Holdings, Inc. (collectively "Taurus" or "Defendants"), which discharged unexpectedly without pulling the trigger, causing severe injuries to Plaintiff. Plaintiff brings this action for damages against Taurus for negligence and strict liability.

## PARTIES

1. Plaintiff is a resident of Colorado who suffered injuries at his home caused by a Taurus PT 24/7 PRO DS 9mm handgun, Serial Number TCU71248 (hereinafter "Taurus Pistol") purchased in Colorado, which had been manufactured by Taurus.

2. Defendant Taurus International Manufacturing, Inc. and Defendant Taurus Holdings, Inc. are citizens of Georgia and have a principal office located at 100 Taurus Way, Bainbridge, Georgia 39817.

3. Upon information and belief, Defendants are contractually bound by each other's liabilities and are essentially the same defendant for the purposes of the allegations set forth herein.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is asserted pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendants pursuant to C.R.S. § 13-1-124 because Defendants transact business and distribute their products in the State of Colorado, including having distrusted the Taurus Pistol.

6. Venue is proper pursuant to 28 U.S.C. §1391(b)(2), as the Defendants conduct business within this District and the acts alleged by Plaintiff occurred in this District.

## FACTUAL ALLEGATIONS

7. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

8. Forjas Taurus, S.A., a small tool manufacturer, began production of firearms in Brazil in 1941. In 1968, Forjas Taurus, S.A. entered the U.S. firearms market and introduced U.S. consumers to its pistols.

9. In 1982, Forjas Taurus, S.A. created Taurus Holdings, Inc. in Miami, Florida to establish a distribution network for its pistols in the United States.

10. To increase its sales and boost its image, Taurus began offering a Lifetime Repair Policy in 1984 to instill confidence in consumers.

11. According to its webpage, Taurus is "proud to offer a variety of pistol models that reflect our unwavering commitment to product quality, innovation, craftsmanship and value."

12. In or about 2013, Plaintiff purchased the Taurus Pistol.

13. The Taurus Pistol, as well as a number of other firearm models manufactured by Taurus, was designed, manufactured, and distributed with a defective firing pin block safety device that can discharge the firearm when the safety mechanism is engaged.

14. Taurus knowingly designed, manufactured, and sold the defective Taurus Pistol purchased by Plaintiff.

15. Taurus knew of the defect in the Taurus Pistol well before Plaintiff made his purchase.

16. In or about September 2013, the Sao Paulo State Military Police in Brazil recalled all 98,000 of the .40 caliber S&W Taurus 24/7 DS Pistols issued to their personnel after discovering that the pistols could be discharged without the trigger being pulled.

17. Despite having knowledge of the defective safety mechanism, Taurus continued to market and sell these defective firearms to achieve profits at the expensive of public safety and Plaintiff's safety.

18. On February 13, 2019, Plaintiff visited a shooting range where he fired his Taurus Pistol, as well as other firearms he owned.

19. Later that day, Plaintiff returned home, spoke with his wife, and went to the basement to clean his firearms before storing them. Plaintiff cleaned the Taurus Pistol last.

20. After cleaning the Taurus Pistol, Plaintiff attempted to place the loaded Taurus Pistol back into its typical storage place at his home. Plaintiff kept the Taurus Pistol loaded because it was a firearm that he used for home defense.

21. Plaintiff inserted the magazine and loaded a round into the chamber of the Taurus Pistol.

22. Plaintiff then initiated the safety mechanism on the Taurus Pistol, at which point it discharged, striking Plaintiff in his left hand.

23. The bullet traveled into Plaintiff's wrist and did not create an exit wound.

24. The bullet ultimately lodged itself below Plaintiff's left elbow.

25. Plaintiff began profusely bleeding and wrapped his arm in a towel.

26. Plaintiff's wife drove him to a family health clinic in Elizabeth, Colorado, and once there the physician called an ambulance and took Plaintiff to a trauma center in Parker, Colorado.

27. Once at the trauma center, Plaintiff underwent surgery.

28. Plaintiff continues to suffer from his injuries, including limited use of his left hand.

4

## FIRST CAUSE OF ACTION
**Negligence**

29. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

30. At all times relevant, Taurus was engaged in the business of designing, manufacturing, marketing, testing (or failing to adequately test), promoting, distributing, and selling firearms, including the Taurus Pistol.

31. Taurus owed a duty to use ordinary care in the design, manufacture, marketing, promotion, distribution, and sale of the Taurus Pistol.

32. At all times relevant, Taurus had a duty to design, manufacture, market, promote, distribute, and sell firearms, such that those products would not pose unnecessary risks of harm to consumers reasonably expected to use such products.

33. Taurus had a duty not to sell firearms to the public that were susceptible to the defective safety and unintended discharge while being used in their intended and foreseeable manner.

34. Taurus had a duty to design and manufacture its firearms, including the Taurus Pistol, such that it would not pose an unacceptable risk of safety failure and unintended discharge while being used in the manner in which Taurus marketed and sold it to be used and in a manner in which Taurus knew it would be used.

35. Taurus had a duty to either design out or guard against the risk of the safety failing during use.

36. Taurus had a duty to design out or guard against the risk of its firearms discharging unintentionally.

37. Taurus had a duty not to market its firearms to consumers when it had knowledge of the firearms' hazards and risks because of the defect.

38. Taurus owed its customers such as the Plaintiff a duty to act as a reasonable corporation would so act under similar circumstances. This included conducting proper product safety research and proper safety testing prior to placing Taurus firearms into the stream of commerce. The Sao Paolo police recall, as well as the numerous other reports of unintended discharge of firearms, should have put Taurus on notice of a safety defect with its firearms, including the Taurus Pistol.

39. Taurus negligently designed, manufactured, marketed, distributed, fabricated, prepared, and sold the Taurus Pistol in that it failed to exercise reasonable care to prevent the Taurus Pistol from creating an unreasonable risk of harm to a person who might reasonably be expected to use the Taurus Pistol in an expected or reasonably foreseeable manner.

40. Taurus negligently designed, manufactured, marketed, promoted, processed, assembled, distributed, prepared, fabricated, and sold the Taurus Pistol and, in so doing, breached its duties set forth herein.

41. At all times herein relevant, and on or before February 13, 2019, Taurus, by and through its duly authorized agents, employees and/or servants, or representatives, breached the aforementioned duties through one or more of the following careless and negligent acts and/or omissions:

   a. Taurus carelessly and negligently marketed, promoted, assembled, processed, distributed, fabricated, sold and installed the Taurus Pistol, which posed the unreasonably and unacceptable risk of unintentional discharge while being used in its intended manner.

    b. Taurus sold firearms with an unreasonable risk of safety failure and unintended discharge that Taurus knew or should have known posed a risk of serious injury to users when used in an expected and intended manner.

    c. Taurus carelessly and negligently failed to design out or guard against the risk of the safety defect and unintended firearm discharge during use, even though Taurus knew or should have known that the Taurus Pistol posed the risk of catastrophically failing and discharging without pulling the trigger.

    d. Taurus carelessly and negligently failed to warn purchasers and foreseeable users such as the Plaintiff of the Taurus Pistol's defective and otherwise known dangerous condition.

    e. Taurus knew or should have known from the widespread news reports and its own litigation that its firearms were unreasonably susceptible to failure, yet Taurus negligently failed to address the design flaws in the product or provide suitable and reasonable warnings and instructions with the product.

    f. Taurus carelessly and negligently marketed firearms that were not properly tested, designed, or manufactured to be used safely in their intended and foreseeable manner.

    g. Taurus misleadingly portrayed and misrepresented its products as high quality and superior to the other offerings in the market when, in fact, its firearms were susceptible to safety failure and unintended discharge.

42. Taurus was otherwise negligent and acted unreasonably in designing, manufacturing, marketing, distributing, preparing, and/or selling firearms that presented a substantial and unreasonable risk of injury to foreseeable users, including Plaintiff.

43. As a direct and proximate result of Taurus's negligent acts and omissions, the Taurus Pistol discharged while in the safety position, shooting Plaintiff in his left arm.

44. As a direct and proximate result of Taurus's negligent acts and omissions, Harrison was injured and suffered significant damages.

45. As a direct and proximate result of the foregoing actions and conduct of Taurus, Plaintiff has suffered, and will continue to suffer, economic damages including medical expenses, as well as non-economic damages including pain and suffering, disfigurement, humiliation, mental anguish, and inconvenience.

## SECOND CAUSE OF ACTION
### Strict Liability

46. Plaintiff incorporates the preceding allegations by reference as if fully stated herein.

47. At all times material to this action, Taurus was in the business of designing, testing (or failing to adequately test), approving, manufacturing, promoting, marketing, assembling, distributing, and selling firearms, including the Taurus Pistol that injured Harrison.

48. At the time the Taurus Pistol left the control of Taurus, it was defective and unreasonably dangerous to a person who might reasonably be expected to use it. The Taurus Pistol was defective and unreasonably dangerous in one or more respects as set forth in the prior count and elsewhere in this Complaint and as further set forth herein.

49. The Taurus Pistol, as manufactured, marketed, and sold by Taurus, unexpectedly discharged while the safety mechanism was in the "on" position, causing severe and permanent injuries to Plaintiff.

50. The Taurus Pistol was unreasonably susceptible to safety failure and discharge without pulling the trigger while being used in its intended manner.

8

51. The Taurus Pistol was not appropriate or fit to be used as a firearm due to its propensity to discharge while the safety mechanism was armed and/or when the trigger was not pulled and injure a user while being used in its intended manner.

52. Taurus knew that its product was susceptible to safety failure and unintended discharge when used in its expected manner and that failure in a firearm like the Taurus Pistol could prove injurious or deadly, yet Taurus failed to incorporate design features into the Taurus Pistol that would minimize such risks.

53. Rather than incorporate design features into the Taurus Pistol that would protect or shield the user or minimize the chances of safety failure and unintended discharge, Taurus designed the Taurus Pistol such that when placing the safety mechanism in the "on" position the gun would discharge.

54. Taurus failed to subject its firearms generally and the Taurus Pistol specifically to reasonable testing or quality assurance analysis – despite knowing that it products were susceptible to failure in a manner that would pose grave risks of injury and death to its customers.

55. The Taurus Pistol lacked reasonable design features to protect or guard against unintended discharge even though it was foreseeable and known that the safety mechanism was inadequate and that failure in a product like a firearm could prove to be injurious or deadly.

56. The propensity of the Taurus Pistol to unintentionally discharge posed especially significant risks to consumers in that firearms are designed and intended to be used in manner in which a user would not expect a firearm to discharge without pulling the trigger.

57. The Taurus Pistol was defective and unreasonably dangerous in that it was completely unfit for and unsuitable for being safely used for the purposes and in the manner in which it was sold and marketed.

58. Defects in the Taurus Pistol were the cause of the unintentional discharge that injured Plaintiff.

59. The Taurus Pistol was expected by Taurus to reach, and did reach, the user or consumer without substantial change to the condition in which it was sold.

60. Plaintiff was a person who reasonably would be expected to purchase and use the Taurus Pistol.

61. Plaintiff used the Taurus Pistol in a manner that was both foreseeable to Taurus and in a manner intended by Taurus.

62. The Taurus Pistol was dangerous beyond the contemplation of the ordinary consumer, which Taurus knew or should have known would not otherwise be aware of the Taurus Pistol's propensity for safety failure and unintended discharge.

63. As a direct and proximate result of the defective and unreasonably dangerous condition of the Taurus Pistol when it left the control of Taurus, the Taurus Pistol discharged while in the safety position, shooting Plaintiff in his left arm, causing serious and permanent injuries and damages.

64. As a direct and proximate result of the foregoing actions and conduct of Taurus, Plaintiff has suffered, and will continue to suffer, economic damages including medical expenses, as well as non-economic damages including pain and suffering, disfigurement, humiliation, mental anguish, and inconvenience.

## JURY DEMAND

Plaintiff requests a trial to a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Harrison prays for judgment against Defendants in an amount to be determined at trial, pre-judgment and post-judgment interest, costs and expert witness fees, and for such other and further relief as provided by statute and that the Court may deem proper.

Dated: February 1, 2021.

                                          Respectfully submitted,

                                          */s/Andrew C. Quisenberry*
                                          Andrew C. Quisenberry, Esq.
                                          J. Howard Thigpen, Esq.
                                          BACHUS & SCHANKER, LLC
                                          101 West Colfax Avenue, Suite 650
                                          Denver, CO 80202
                                          Telephone: 303.893.9800
                                          Facsimile: 303.893.9900
                                          Andrew.Quisenberry@coloradolaw.net
                                          Howard.Thigpen@coloradolaw.net

                                          *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2021, a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT AND JURY DEMAND** was filed via CM/ECF, causing an electronic copy to be served on the following:

Theresa Wardon Benz
Shawn K. Neal
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: 303.244.1800
Facsimile: 303.244.1879
benz@wtotrial.com
neal@wtotrial.com

John F. Weeks IV
Benjamin e. Reed
Smith, Gambrell & Russell, LLP
1230 Peachtree Street, N.E.
Promenade, Suite 3100
Atlanta, Georgia 30309
Tel: 404-815-3500
Fax: 404-815-3509
jweeks@sgrlaw.com
breed@sgrlaw.com

Attorneys for Defendants

                                                              */s/Andrew C. Quisenberry*
                                                               Andrew C. Quisenberry